(41 App. Div. 171.)

### PERSONS et al. v. HAWKINS et al.

(Supreme Court, Appellate Division, Fourth Department. June 6, 1899.)

1. TRIAL.—DIRECTION OF VERDICT—MOTIONS BY BOTH PARTIES—EFFECT.

　　Where both parties move for direction of a verdict, and one is directed by the court, and taken and entered by the clerk, it is then too late to ask to go to the jury on any question.

2. PAROL EVIDENCE—CONDITIONAL DELIVERY OF NOTE.

　　One making a note without consideration, and under an agreement of another, to whom it is delivered, that he shall not be liable thereon, can show such fact by parol evidence.

3. NOTE—CONSIDERATION.

　　The maker of such note is not liable thereon to the person to whom it is so delivered.

Appeal from trial term, Erie county.

Action by Henry H. Persons and another, as receivers of the Bank of Commerce in Buffalo, against William M. Hawkins, impleaded. From a judgment dismissing the complaint, and from an order denying a new trial, plaintiffs appeal. Affirmed.

The action was brought to trial at a trial term in Erie county before the court and a jury on the 4th day of October, 1898. The action was to recover upon three promissory notes respectively made by the respondent Hawkins, one

bearing date August 5, 1896, for $3,000, made to the order of Buffalo City Mills, Limited; one bearing date September 8, 1896, for $3,000, made to the order of Buffalo City Mills, Limited; and one for $3,069.14, dated October 5, 1896, made to the order of Buffalo City Mills, Limited. The several notes were indorsed by the payee and the firm of E. H. Kruger & Co., the members of which firm were made co-defendants in the action. The notes were made to represent the approximate indebtedness of Burkhardt & Sons to the Bank of Commerce, of which bank the plaintiffs subsequently became receivers. About the 1st of June, 1896, the bank ascertained that Burkhardt & Sons were in failing circumstances, and notice of such information received by the bank was delivered to one Andrew Brown, who was the manager of the Buffalo City Mills, Limited, and in some manner connected with E. H. Kruger & Co., the indorsers upon the Burkhardt paper. On the 2d of June, in response to information communicated to Brown by the cashier of the bank, efforts were instituted for the purpose of securing the debt, and the defendant Hawkins was requested to assist in such efforts. The cashier suggested that Mr. Clark assist in making the arrangements for securing the debt, instead of Mr. Hawkins; and on the 4th of June, 1896, Reed wrote a letter to Brown to the effect that he had had an interview with Hawkins, and had a favorable opinion of him. On the 5th of June, 1896, Brown wrote a letter to the bank, acknowledging a letter of the 4th of June, in which he stated, viz.: "I thank you for the expressions contained therein, especially regarding Mr. Hawkins. I consider him extremely useful when any arrangement has to be made with delinquents, or where security has to be got without disturbing the relations existing between the parties. He has managed several matters very successfully for us." Hawkins went to the city of New York, and from there to the city of Philadelphia, and obtained from Burkhardt & Sons a conveyance of certain real estate, with a view of securing Burkhardt & Sons' indebtedness to the bank. In the further efforts to secure the indebtedness of Burkhardt & Sons to the bank, notes were made and executed by Hawkins, and indorsed by Buffalo City Mills, Limited, and by E. H. Kruger & Co. The answer of defendant Hawkins sets up in detail the circumstances under which the notes in suit were made, and alleges "that thereafter, and when the notes and acceptances became due and payable, the Bank of Commerce in Buffalo and this defendant were advised that, in order to make the transaction regular and legal upon its face, that it would be necessary for this defendant to sign the renewals of said notes and acceptances, or to give his own promissory notes therefor, in order that said transaction might appear legal and regular upon its face." He further alleges that he proposed to give the Bank of Commerce a mortgage on the real estate in Philadelphia conveyed to him by Burkhardt & Sons for the amount of the notes and acceptances, and that the bank agreed to and did accept, and he further alleges that: "Thereupon, and when the said notes became due and payable, at the request of the said Bank of Commerce in Buffalo, and with the agreement and understanding that this defendant should not be liable upon said notes, but that the same should be given for the purpose of avoiding the effect of the statutes and laws of the state of Pennsylvania in cases of trusts, and preventing it becoming and operating, under the laws of Pennsylvania, as an assignment for the benefit of creditors, defendant executed and delivered the said promissory notes set up in the complaint, under said agreement, and for said purpose and no other. That as to this defendant the said notes and acceptances were without consideration, either directly or indirectly. That in all said transactions, and in the giving of said notes, this defendant was acting in the interest and on behalf of the Bank of Commerce in Buffalo, and in no other way."

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and NASH, JJ.

Edward R. Bosley and Norris Morey, for appellants.
Charles W. Sickmon, for respondent.

HARDIN, P. J. Upon the close of the evidence the counsel for the plaintiffs moved for the direction of a verdict against the defendant Kruger; and he also said, "I will make the request that a verdict

be directed in favor of the plaintiffs and against Mr. Hawkins on the ground that the cause of action as alleged upon the notes is admitted by the answer, and that no defense is made out by the evidence." "Thereupon the counsel for the defendant Hawkins moved for the direction of a verdict in favor of the defendant Hawkins, dismissing the plaintiffs' complaint, on the ground that they have failed to make out a cause of action against the defendant." After those two motions were submitted to the court, it was observed by the court, viz.: "A verdict is directed for the plaintiff against Kruger for the sum of $10,155.29, and in favor of the defendant Hawkins." Thereupon the counsel for the plaintiffs interrogatively inquired, viz.: "In favor of the defendant Hawkins, did I understand you to say?" The court responded, "Yes, sir." Thereupon the counsel for the plaintiffs observed: "I will ask the court to submit to the jury the question of fact as to whether ——." In response the court observed: "I have disposed of this whole case. The verdict has been taken and entered by the clerk." Thereupon the counsel for the plaintiffs observed: "I will except to the direction, and that will raise all the questions that I can raise. Will your honor entertain an application to have the exceptions heard at the general term?" In response thereto the court said: "No; I think you had better take the regular course." Thereupon the counsel for the plaintiffs observed: "I wish to make a request that the issue of fact presented by the defendant's answer be submitted to the jury upon the evidence." In response thereto the court observed: "The matter is all disposed of, Mr. Morey. I can't do it now." Thereupon the counsel for the plaintiffs said: "That request follows the direction always, if the court makes a direction." In answer to that observation made by the plaintiffs' counsel, the court observed: "The clerk has taken the verdict, and the case is ended." Thereupon the counsel for the plaintiffs said: "You have noted my exception to the direction of a verdict?" In response to which the court observed: "Yes, sir. You may enter an exception to the direction of a verdict."

As the record comes to us, we are of the opinion that all questions of law and fact were submitted by the respective parties to the court for decision, and that the finding made by the trial court in directing a verdict in favor of the defendant Hawkins is to be treated in the same manner as though the jury had found, upon all the evidence in the case, in favor of the defendant Hawkins.. In Howell v. Wright, 122 N. Y. 667, 25 N. E. 912, both parties asked the court to direct a verdict in their favor. The court directed a verdict for the plaintiff, and the defendant moved for a new trial, and his motion was denied. He then asked to go to the jury upon the question of consideration, and his request was refused; and it was held that the exception to the refusal was not available, as the request came too late. This rule was restated in Adams v. Lumber Co., 159 N. Y. 180, 53 N. E. 806, in the following.language:

"The request by both parties for the direction of a verdict amounted to a submission of the whole case to the trial judge, and his decision upon the facts has the same effect as if the jury had found a verdict in the plaintiffs' favor after submitting the case to them."

58 N.Y.S.—53

In this case we think the request came too late, as the verdict had been directed by the court, and taken and entered by the clerk, before the request to submit any question to the jury was made.

2. Upon looking into the record, we find there was evidence tending to support the defense set up by the defendant Hawkins in his answer; and, while there may be said to be some conflict in the evidence, we think the direction of the jury is supported sufficiently by the evidence, and that we ought not to interfere with it. Prior to the execution of the promissory notes by the defendant Hawkins, he was under no liability to the bank for the indebtedness which the officers of the bank were seeking to have secured; and prior to his incurring any liability by signing the notes he was assured that it was merely a formal matter, and that he should under no circumstances be held liable. In Benton v. Martin, 52 N. Y. 570, it was held that oral evidence may be given as to the reasons for the giving of an instrument not under seal, and as to the conditions attached to the instrument at the time of its delivery, and that the annexing of such conditions to the delivery is not an oral contradiction of the written obligation. In Bank v. Colwell, 57 Hun, 169, 10 N. Y. Supp. 864, it was held that where at the time that a note is discounted there is a distinct understanding between the maker of the note and the payee, which is stated to the bank at which it is discounted, that the maker would incur no liability by the signing of the note, and he would not be liable thereon to the bank which has discounted it, such paper is not merely accommodation paper, and is, under such circumstances, unenforceable against the maker thereof. In the course of the opinion delivered in that case it was said:

"In the case at bar it appears that the plaintiff knew that it was the understanding of the defendant that he should not under any circumstances be liable upon the note. Knowing that this was the agreement between the parties, it is difficult to see how, with such knowledge, it could acquire the right to enforce that which it knew had been agreed should not be enforced. The plaintiff did not, therefore, occupy the position of a bona fide holder."

According to the testimony of the defendant Hawkins, when he executed the notes he was assured by the parties representing the bank that no liability should attach to him by reason of his executing the notes, and that it was a mere formality requested of him. He says that Mr. Clark, the attorney and a director, who was called in to close up the transaction at the bank, said:

" 'Well, you ought to be connected with these notes in some way.' I said, 'Well, I guess that's right, but I don't care to be on so many notes,—$10,-000. 'Well,' he said, 'it is a matter of form. Nobody would hold you upon them.' I said, 'Well, under those conditions, I would sign them.' And that is about all that took place between Clark and I. I don't know whether Mr. Gratwick heard it or not. He could, if he had been listening. The notes were made. Mr. Clark, I think, made the notes, and sent them down to New York; and they were sent back to Mr. Clark's office, and I went in there and signed them. I did not sign until after the indorsement of Kruger & Co. and the Buffalo City Mills."

We have not overlooked the fact that the evidence given by the defendant was contradicted, and that some circumstances were developed tending to question the truth of his statements. However,

the verdict supports the version of the transaction as detailed by the witness Hawkins.

In Simmons v. Thompson, 29 App. Div. 559, 51 N. Y. Supp. 1018, it was held, viz.:

"A party who has been requested to give a note, upon which further advances can be made by a trust company to an improvement company, and who is assured by an officer of the trust company, by whom the loan is being negotiated, that the note is to be merely a matter of form, to enable the trust company to make the loan without criticism; that he will incur no personal liability by signing it,—may successfully interpose such facts as a defense to the enforcement of the note against him by the payee, on the ground that the note was without consideration, and was delivered upon the condition that the maker should not be liable thereon. Where an officer of a corporation, high in rank, is engaged in the transaction of the business of the corporation at its place of business, the corporation is bound by an agreement made by him which is apparently within his authority."

That case refers to Higgins v. Ridgway, 153 N. Y. 130, 47 N. E. 32, and assumes to follow it. In Higgins v. Ridgway, supra, it was held, viz.:

"It is a defense to the enforcement of a promissory note against the maker by the party to whom he delivered it that the note was without consideration, and was delivered upon the condition that the maker should not be liable thereon. As between the original parties to a promissory note and others having notice, a conditional delivery, as well as want of consideration, may be shown; and parol evidence that the delivery was conditional, and of the terms of the condition, is not open to the objection of varying or contradicting the written contract."

Near the close of the opinion, Judge Martin observed:

"We think the import of the defendant's evidence is that the delivery of the note in suit, as well as the note it was given to renew, was conditional, and was for the accommodation and to serve some particular purpose of the bank. Therefore, as there was no consideration for the note, and as the bank could not be regarded as a bona fide holder, we are of the opinion that the plaintiff's exceptions to the refusal of the court to direct a verdict for the plaintiff, and to the charge of the court, were invalid."

We think the language just quoted may be appropriately applied to the case in hand. The evidence sustains the position taken by the defendant in his answer and in his testimony, to the effect that he executed the notes without receiving any consideration therefor, and that he was assured that it was a mere formality, and that under no circumstances would he be held liable. We think the direction given by the trial judge should be sustained.

Judgment and order affirmed, with costs. All concur.