estate, and explanatory of the terms under which it was intended to have it managed, is a matter to be determined not by any particular expressions in the devise, but by the entire will; and, applying this rule to the present case, it seems quite clear that the testator's declaration that lots Nos. 33 and 34 of the Mile Reserve should constitute the farm and domain of the institution he was seeking to establish was but the expression of a desire that certain portions of his estate should be used and managed in a manner most likely to accomplish the object he had in view, and that, when construed in connection with the entire instrument, such declaration indicated no intention upon the part of the testator to impose such use as an absolute condition of the devise. Since the death of the testator the conditions surrounding his estate have greatly changed. Land that was then desirable for farming purposes only has little or no value for such purposes now, and probably the 17 acres sold to the defendant are worth more for building lots than were the entire 350 acres of lots 33 and 34 at the time the will was executed. It is not impossible that it was within the contemplation of the testator that this condition of things might exist in the near future, and that for this very reason he invested his trustees and their associates and successors with very large discretionary powers. As he was a lawyer, he must certainly have known that, if an incorporation was effected under the general laws of this state, as authorized by him, the "benevolent institution" he had in mind would thereby be empowered "to hold, purchase, and convey real and personal estate as the purpose of the corporation shall require, not exceeding the amount limited in its charter" (2 Rev. St. [7th Ed.] p. 1530, § 1, subd. 4); and if he wished to guard against, or in any wise limit, the general powers thus created by statute, he should have protected himself by an express condition (Erwin v. Hurd, supra). The views to which we have given expression seem to us to be in strict accord with well-recognized rules of law, and they are the more readily adopted in the present instance by reason of the fact that, while the sale of the real estate in question will furnish the plaintiff with the means necessary to its continued existence as a charitable institution, it will in no wise impair the usefulness of the remaining portion of lots 33 and 34 for the purposes of a "farm and domain." Our conclusion, therefore, is that the plaintiff is able to convey a good and marketable title to the lands embraced in its contract with the defendant, and that it is, consequently, entitled to a judgment decreeing specific performance of such contract, together with the costs of this action. All concur.

(63 App. Div. 480.)

### UTICA CITY NAT. BANK v. TALLMAN.

(Supreme Court, Appellate Division, Fourth Department. July 23, 1901.)

1. BILLS AND NOTES—RENEWALS—CONSIDERATION.

Where a widow owning all the property out of which a note of her deceased husband is payable indorses individually renewals of such note until it can be discharged without resorting to a forced sale of the property, such renewals are merely extensions of the original obligation, furnishing ample consideration for the indorsement.

**2. SAME—CONDITIONAL DELIVERY.**

A renewal note was sent by a bank to the maker's widow to execute, and she returned it, with her indorsement, "without recourse." The indorsement being unsatisfactory, the bank returned the note to her coexecutor, stating that it had no intention to trouble the widow as an indorser, and would carry the note until the assets of the estate could be marshaled, and requested him to secure her indorsement, which he did. The bank's president stated there was no intention not to hold the widow personally on her indorsement. *Held* sufficient to show that the indorsement was not made on a promise that such widow should, in no event, be held liable thereon.

**3. SAME—EVIDENCE—ADMISSIBILITY.**

In a suit by a bank on a note, a letter written by its vice president, not in his official capacity, and not on the bank's paper, to an indorser of the note, is properly excluded.

Appeal from special term, Oneida county.

Action by the Utica City National Bank against Gertrude L. Tallman. From a judgment for plaintiff on the report of a referee, defendant appeals. Affirmed.

In May, 1896, the plaintiff discounted a note of $4,000, made by one Henry C. Tallman, and indorsed by Frederick H. Lawrence, as executor of the estate of George C. Tallman, deceased, and by Edward A. Tallman. This note, which was dated May 26, 1896, and fell due on the 27th day of July following, was, at its maturity, renewed by a note of like amount, made and indorsed by the same parties. On the 10th day of December, 1896, when this renewal note matured, Henry C. Tallman paid the interest thereon and $1,500 of principal. He then gave a new note for $2,500 and interest, which was indorsed by Edward A. Tallman, an accommodation indorser. Thereafter, and on the 16th day of December, 1896, Henry C. Tallman died, leaving a last will and testament, in and by which he bequeathed to the appellant, Gertrude L. Tallman, who was his wife, all of his personal property, except a legacy of $2,500 to a church; and he also devised to her all of the real estate of which he died seised. Mrs. Tallman and Frederick H. Lawrence were duly appointed executors of Henry C. Tallman's will on the 8th day of March, 1897, and immediately entered upon the discharge of their official duties. Thereafter, and on the 10th day of April, 1897, the note of Henry C. Tallman, bearing date December 10, 1896, fell due, and the same was renewed by a note of $2,551.70. This note was made by the executors of Henry C. Tallman, and was indorsed by such executors in their individual capacity. On the 30th day of August, 1897, Lawrence, as executor, paid the accrued interest and protest fees upon this note, and the same was thereupon renewed for four months, such renewal bearing date August 10th, on which day the note of which it was a renewal fell due. When this last-mentioned note matured, viz. December 10, 1897, it was again renewed by a note of $2,500, made by the executors, and indorsed by the appellant, Mrs. Tallman. This note was payable four months after date, but before its maturity Frederick H. Lawrence died, and, as Mrs. Tallman declined to indorse a renewal note, this action was brought.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

Barclay E. McCarty, for appellant.
William P. Quin, for respondent.

ADAMS, P. J. The lengthy and somewhat discursive answer in this action sets forth with much detail a variety of defenses to the note in suit, but apparently the only ones upon which the appellant places much reliance, and certainly the only ones we deem it necessary to consider upon this review, are: (1) That the appellant

was an accommodation indorser, receiving no consideration for her indorsement; and (2) that her indorsement was obtained upon the representation and promise of the plaintiff that she should, in no event, be held liable thereon. Upon both of these issues the learned referee found adversely to the appellant, and we are of the opinion that his findings and conclusions are fully sustained by the facts and the law of the case. It is not disputed, so far as we can discover, that the original note of December 10, 1896, is an existing and valid claim against the estate of Henry C. Tallman, and it seems to be conceded that such estate consists of an undivided interest in certain real estate devised to Henry by his father, and all of the personal property which could be realized out of his father's estate, of which estate Frederick H. Lawrence, one of the original indorsers, was the executor. This real estate consisted mainly of the Hotel Castleton and other property on Staten Island and in Brooklyn, and also of western lands. There was likewise a large amount of hotel furniture, and numerous mortgages, contracts, and other personal property, in attempting to dispose of which many complications had arisen, and the estate was consequently involved in some litigation and confusion. With the exception of the church legacy of $2,500, Mrs. Tallman was the owner of all this property, out of which the note in suit would, of course, have to be paid. It became, therefore, of great importance and interest to her to defer its payment until the assets of the estate of her husband could be marshaled and disposed of without a sacrifice. It is impossible, in view of the evidence before us, to resist the conclusion that Mrs. Tallman was well aware of the situation of affairs, and of the desirability of extending the time of payment of the obligation for which her husband's estate was primarily liable until the same could be discharged without resorting to a forced sale of securities and other property, and it is equally apparent that it was to accomplish this very purpose that the note was renewed from time to time by the plaintiff. Such being the case, the renewals were simply extensions of the original obligation, and it follows that such extensions furnished ample consideration for the appellant's indorsements. In re Utica Nat. Brewing Co.; 154 N. Y. 268, 48 N. E. 521; Bank v. Parker, 130 N. Y. 415, 29 N. E. 1094; Finch v. Skilton, 79 Hun, 531, 29 N. Y. Supp. 925. We do not overlook the fact that the plaintiff's president, upon being asked, when upon the witness stand, whether Mrs. Tallman ever received any consideration for her indorsement, answered "No"; but manifestly he had in mind the payment of a direct, pecuniary consideration by his bank, and not such a consideration as the law imputes to transactions of the character just adverted to. It is undoubtedly now well settled in this state that, as between the original parties to a promissory note, a conditional delivery, as well as a want of consideration, may be proved by parol, and that, where such a note is without consideration, and has been delivered upon the condition that any party thereto shall not be liable thereon, it is not enforceable against that party except in the hands of a bona fide holder without notice. Higgins v. Ridgway, 153 N. Y. 130, 47 N. E. 32;

Benton v. Martin, 52 N. Y. 570; Persons v. Hawkins, 41 App. Div. 171, 58 N. Y. Supp. 831; Simmons v. Thompson, 29 App. Div. 559, 51 N. Y. Supp. 1018; A. H. Andrews & Co. v. Hess, 20 App. Div. 194, 46 N. Y. Supp. 796. The learned referee before whom this case was tried recognized the existence of this rule, but he was of the opinion that it had no application to the facts of this case, and in this view we are disposed to concur. In all of the cases above cited the party who was seeking to avail himself of the above-mentioned rule either had no interest in the transaction which resulted in the giving of the note, or else he executed the same without receiving any consideration therefor. As has already been shown, such is not the case here, for the appellant had a direct interest in having the enforcement of her husband's note deferred, and that interest amounted to a consideration for her indorsement of the renewals. She was, therefore, in no true sense an accommodation indorser, and consequently she is hardly in a position to invoke the rule just adverted to.

But, aside from the question of consideration, we think the proofs fail to show any such conditional indorsement and delivery as is claimed. Such a contention rests in a large measure upon a letter which was written to Mrs. Tallman's co-executor, Mr. Lawrence, by the plaintiff's president, in consequence of which the appellant asserts that she was induced to indorse the note in suit. It seems that a renewal note had been sent to Mrs. Tallman for her to execute, which she returned to the bank with her indorsement thereon, but "without recourse." This was unsatisfactory to Mr. Symonds, the president of the bank, and he thereupon wrote the following letter to Mr. Lawrence:

"The Utica City National Bank.

"Utica, N. Y. Apr. 28, '97.

"Mr. F. H. Lawrence—My dear Mr. Lawrence: I return note indorsed by Mrs. Tallman 'without recourse.' The bank simply desired the note executed as I made it, that it might conform to our rules. We have no disposition or intention to trouble Mrs. Tallman as an indorser, and are willing to carry by renewals the note for months that you may marshal assets of the estate agreeably to law. I trust, with this explanation, Mrs. Tallman will be willing to oblige, she being the sole beneficiary in the estate.

"I am, very truly,                                    C. S. Symonds, Pres."

Assuming, as was doubtless the case, that this letter was brought to the attention of Mrs. Tallman, it certainly contains no definite, absolute assurance that her indorsement was desired as a mere matter of form, or that she would incur no personal liability by attaching her signature to the note. Indeed, such an interpretation of it would be quite inconsistent with the action of Mr. Symonds in refusing to accept Mrs. Tallman's indorsement "without recourse." A much more reasonable interpretation, as we view it, is that the bank was willing to renew the note from time to time indefinitely, or at least until the executors of Henry C. Tallman could marshal the assets of the estate which they represented, and thus place themselves in a position to pay the note from the moneys of that estate. In this view of the case, the writer, as he testified upon the trial, had no disposition or intention to trouble Mrs. Tallman, as an executor, or to

enforce collection of the note of her personally; for he doubtless expected, as he was justified in doing, that it would ultimately be paid out of her husband's estate. That he did entertain this expectation is made apparent by certain letters which he subsequently addressed to Mr. Lawrence; for on the 6th day of January, 1898, we find him writing that gentleman as follows:

"As about a year has elapsed since the death of Mr. Tallman, may I ask how the affairs of his estate stand, and what chance there is of an early payment of the note we hold?"

And again, on the 13th of the same month, he writes:

"In view of your letter touching the poverty of Mr. Tallman's personal estate, may I ask if you will kindly execute the inclosed order for us? You can sign as executor of H. C. Tallman's estate, with Mrs. Tallman, as executrix, or, if preferred, I presume either of you alone will meet the requirements of validity. We will oblige in carrying the note along as far as possible, and do all we can to meet your wishes consistent with official requirements."

The order referred to in this letter was addressed to the administrator of the estate of George C. Tallman, requesting him to pay to the plaintiff from moneys in his hands due the estate of Henry C. Tallman a sufficient sum to cancel the note in suit. These letters clearly indicate that the plaintiff was not only expecting this note to be paid by the estate of Henry C. Tallman, but that, through its president, it was doing everything possible to accomplish that purpose; but at the same time they do not indicate, nor is there any other evidence which, when fairly construed, does indicate, that the bank relied exclusively upon that estate for the payment of its note. On the contrary, Mr. Symonds, when called as a witness by the defendant, and asked if there was any idea of holding Mrs. Tallman personally upon her indorsement, replied:

"Certainly there was. I was willing to abide my time, and give them a reasonable opportunity to marshal the assets of this estate to pay the note."

And again, when asked what he meant by saying in his letter to Lawrence that "we have no disposition or intention to trouble Mrs. Tallman as an indorser," he answered:

"I meant that, as long as she chose to carry this note along in that form, we would be perfectly willing to wait and accommodate her until the assets of the estate were marshaled so that the note could be paid."

It is but fair to say that there are some other portions of this witness' evidence, which, taken by themselves, would perhaps permit a different construction of the letter of April 28th; but, when all the evidence bearing upon this branch of the case is considered, it seems plain that the plaintiff's president had no idea of securing the indorsement of Mrs. Tallman as a matter of form, only, although he had no expectation of ever calling upon her to fulfill her legal obligation, because he did not suppose that such a course would become necessary. The rule which permits a party to a written instrument to prove by parol that the execution and delivery of that instrument, so far as he is concerned, was upon the condition that he should not be liable thereon, is one which, as already suggested, is now well established; but at the same time it is one which, for obvious reasons, ought not, in our judgment, to be applied, unless such condition

71 N.Y.S.—55

is established by the clearest and most convincing proof; and that certainly cannot be said of the present case.

Our attention has been directed to a number of exceptions taken to the admission and exclusion of evidence during the progress of the trial, but none of these, in our opinion, presents reversible error, and but one requires special notice. The defendant offered in evidence a letter bearing date May 1, 1897, written by Mr. E. A. Tallman to Frederick H. Lawrence. This was objected to by the plaintiff's counsel, and the same was thereupon excluded. It seems that the writer of this letter was a director and vice president of the plaintiff bank, and it was offered upon the assumption that it tended to strengthen the construction placed upon the letter of April 28th, written by the plaintiff's president, Mr. Symonds. We have examined this letter with some care, and find nothing in it which will support this contention. But, were it not so, the letter, in the circumstances of the case, would be inadmissible for any purpose. It does not purport to be written by Mr. Tallman in his official capacity, and is not even written upon bank paper. So far as appears, it was merely a friendly letter, written by one person to another, and as such could have no effect upon the issues which were being tried, nor could it aid or prejudice either party to the action. Our conclusion of the entire matter, therefore, is that the judgment appealed from should be affirmed.

Judgment affirmed, with costs. All concur.