(117 App. Div. 493)

### HAMLIN v. HAMLIN et al.

(Supreme Court, Appellate Division, First Department. February 8, 1907.)

1. EVIDENCE—PAROL EVIDENCE—DEEDS—DELIVERY—ADMISSIBILITY.

> Where, in a suit to remove a cloud from title, it appeared that shortly after plaintiff's marriage to her deceased husband, he had purchased the land in question and caused it to be conveyed to her, but that subsequently at his request she had executed deeds of it to him, and the deeds after his death were found unrecorded in his safety deposit vault, parol and circumstantial evidence was admissible to show that it was not the husband's intention to take title.

> [Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 1978.]

2. WITNESSES—COMPETENCY—TRANSACTION WITH DECEDENT.

> In a suit to quiet title to land to which plaintiff had executed a deed to her deceased husband, her testimony as to statements made to her by her husband in regard to the conveyance was incompetent, under Code Civ. Proc. § 829, in relation to testimony as to transactions with a decedent.

> [Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, § 664.]

3. TRIAL—OBJECTIONS TO EVIDENCE.

> In a suit to quiet title to land conveyed by plaintiff to her deceased husband, plaintiff testified as to what she had told her coexecutor of what her husband had told her as to the conveyance, and defendant's counsel acquiesced in permitting the testimony to stand, but later moved to strike it on the ground that it was "immaterial, irrelevant, incompetent, and not within the issues." *Held*, that there was no such objection to the testimony as to call for a reversal of a judgment for plaintiff on the ground

that its admission was contrary to Code Civ. Proc. § 829, in relation to testimony as to transactions with a decedent.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, § 213.]

McLaughlin and Houghton, JJ., dissenting.

Appeal from Special Term, New York County.

Action by Mary B. Hamlin against Herbert W. Hamlin and others. From a judgment at Special Term (100 N. Y. Supp. 701) in favor of plaintiff, defendants appeal. Affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, SCOTT, HOUGHTON, and LAMBERT, JJ.

Robert A. Paddock, for appellants.
Henry W. Taft, for respondent.

SCOTT, J. This action, to remove a cloud upon plaintiff's title to real estate, presents an unusual state of facts.

The plaintiff on April 18, 1904, married Frederick R. Hamlin, now deceased. Shortly after their marriage Frederick R. Hamlin negotiated the purchase of the two pieces of real property involved in the action. One piece, situated at Bellport, in Suffolk county, was conveyed to plaintiff on August 16, 1904, and the other, situated in the city of New York, was conveyed to her on September 7, 1904. Frederick R. Hamlin paid the consideration for both pieces of land, and it was at his instance that the deeds were made out to plaintiff. The deed to the house in the city of New York was placed on record the same day that it was executed, and the deed to the property in Suffolk county was placed on record some time afterwards. On September 8, 1904, the plaintiff executed deeds to her husband, Frederick R. Hamlin, of both of these pieces of property. After his death, on November 27, 1904, the two deeds, both unrecorded, were found in a box belonging to him, and to which he alone had access, in a safe deposit vault. With them was found a policy of fire insurance originally issued to James O'Brien, the grantor of the New York property, on which appeared an indorsement, dated September 9, 1904, reciting that the interest in the policy was vested in plaintiff "as owner." The two houses were used by Mr. and Mrs. Hamlin until his death as their family residence, and the expense of supporting them and making repairs and improvements were paid and borne by Mr. Hamlin.

The plaintiff's contention is that although the deeds from herself to her husband were voluntarily executed by her, and were permitted by her to come into and remain in his possession, there never had been in a legal sense a delivery to or acceptance by him so as to vest the title in him. The case, in effect, turns upon the question as to what were Frederick R. Hamlin's intentions in causing his wife to execute the deeds and intrust their custody to him and her intention in so doing, and upon this subject a considerable amount of testimony was taken. Of direct testimony there was little, for, of course, the plaintiff's mouth was closed as to any statements made by her deceased husband, except to the limited extent that the defendants permitted her to testify on that subject, or themselves offered evidence of her statements. There was considerable evidence, however, as to declarations made by the deceased

to various persons, both before and after the purchase of the property, respecting his intention that it should be the property of his wife. Before the purchase, and during the progress of his negotiations for the purchase, he frequently declared to various persons that he intended to give the properties to his wife, and that he so intended to give them as a wedding present, and after the purchase, while the deeds to himself were resting in his box, he frequently declared that the properties belonged to his wife. There was evidence on the part of the plaintiff that, when the deeds from her to her husband were executed, he told her that it was simply to help him temporarily, in case he needed the money for his business, and that the properties were here, and that he would put the deeds in his safe deposit box and probably they would never be recorded, and that later, while he and she were at the Hot Springs, the deceased told her to remind him to destroy the deeds. The plaintiff's testimony was that she told this conversation to Herbert Hamlin, her brother-in-law, after her husband's death. Herbert Hamlin's version of her conversation on being called as a witness for the defendants is somewhat different. He testified that plaintiff told him that it was Frederick R. Hamlin's intention to give her the houses; that concerning the execution of the deeds she had stated to her husband that he need not be afraid to leave the title to the lots in her name, but that he had replied and had objected to that, and said "that he did not want to feel that if he went broke in his theatrical business the only property he had was out of his name." It appears that Frederick R. Hamlin's business was of such a nature that, while at times he made large sums of money, he was also liable at times to suffer large losses.

It must, of course, be conceded that ordinarily the finding of a complete, fully executed, and apparently effectual deed of conveyance in the possession of the grantee creates a presumption of delivery to and acceptance by him, although that presumption is capable of being refuted. The question after all resolves itself into one of intention, which may be established by parol or circumstantial evidence. To make an effectual transfer of title to real estate by deed, there must be delivery by the grantor and, what is quite as important, acceptance by the grantee. "There must be both a delivery and acceptance with the intent of making the deed an effective conveyance. While the presumption is that a deed was delivered and accepted at its date, it is a presumption that must yield to opposing evidence" (Ten Eyck v. Whitbeck, 156 N. Y. 341–352, 50 N. E. 963; Holbrook v. Trusdell, 100 App. Div. 10, 90 N. Y. Supp. 911), and proof tending to show that no transfer of title was contemplated does not fall within the condemnation of the rule prohibiting oral evidence to vary the terms of a written instrument. Higgins v. Ridgway, 153 N. Y. 130, 47 N. E. 32; Persons v. Hawkins, 41 App. Div. 171, 58 N. Y. Supp. 831.

We are therefore at liberty, in view of all the evidence in the case, to consider whether or not Frederick R. Hamlin when he caused his wife to execute the deeds to himself and to intrust them to him intended thereby to vest the title in himself, or, in other words, intended a delivery by her and an acceptance by himself, using these terms in their legal sense. There are many reasons for thinking that he did not. In the first place, such an intention would be at complete variance with

all of his provën declarations, both before and after the transaction, as to his intention and desire that the property should be his wife's, and no reason is suggested in the evidence or upon the briefs why, if he had intended to take title himself, he should not have done so in the first instance, without going through the useless form of having the conveyance first made to his wife, with an immediate conveyance by her to him. It was said in Ten Eyck v. Whitbeck, supra, that the recording of a deed by a grantee is entitled to consideration upon the question of delivery, and, in the absence of opposing evidence, may justify a presumption to that effect. So, in the present case, the fact that Frederick R. Hamlin omitted to place his wife's deeds to him upon record is entitled to consideration as bearing upon his intention in procuring the deeds to be executed, as are the other circumstances that he kept, along with the deeds in the box, a fire insurance policy in favor of his wife, in which she was specified as owner, and which would have been valueless to him if the title to the property had been transferred to him. The question naturally suggests itself why, if Frederick R. Hamlin did not intend that the title to the property should vest in himself, did he procure the deeds to be executed and placed in his own custody. A possible answer may be found in his statement to his wife at the time the deeds were executed.

One version is that given in behalf of the defendants, to the effect that he said he did not want to feel that, if he failed in his theatrical business, the only property he had was not in his name. The other version, different in form but not in substance, was that he wanted the deeds to help him temporarily in case he needed the money for his business. As has been said, his business was precarious, subjecting him to the possibility of large losses, and it is by no means inconceivable that his purpose was to have the deeds ready so that, if the necessity arose, he might without delay invest himself with the title to the property for the purpose of raising money. Such an inference as to his intention would entirely reconcile his repeated declarations respecting his wife's ownership of the property with his apparently inconsistent act of having the deeds to himself executed. Upon the whole case we are satisfied that the finding of the trial court, to the effect that there was no delivery of the deeds to or acceptance of them by Frederick R. Hamlin, and consequently that the title to the property never vested in him, was correct.

It remains but to consider the question as to the reception of the evidence of plaintiff respecting statements made to her by her husband. Such evidence was clearly incompetent, and, if the question as to its admission was properly raised, it would be fatal to the judgment. Throughout the trial there was manifested great care on the part of the court that no evidence forbidden by section 829 of the Code of Civil Procedure should be received, and offers of such evidence were repeatedly excluded upon objection. The plaintiff was asked concerning some conversation with her coexecutor, the defendant Herbert Hamlin. She was proceeding to relate what she told him as to her husband's statements. Defendants' counsel objected to what the husband said, and the court replied, "No; not what he said, but what she said to him" —evidently referring to Herbert Hamlin. Counsel did not persist in the

objection, and took no exception. The witness then testified as to what she told Herbert Hamlin that her husband had said to her. Defendant's counsel moved to strike the evidence out, but no ruling was made, and no exception taken. A colloquy then arose respecting the evidence, in the course of which the court stated he understood the witness to have testified to what she told her executor, to which defendants' counsel replied, "If the record stands that way, very well." Later a motion was made to strike out all the testimony, but it was not placed upon the ground that it contravened the terms of section 829. It was upon the ground that it was immaterial, irrelevant, and incompetent, and not within the issues. There was certainly nothing in the motion to warn the court that the evidence was objected to as forbidden by section 829, Code of Civil Procedure, especially after counsel's acquiescence in the reception of the testimony a few minutes earlier.

We are therefore of the opinion that the incompetency of the evidence is not so raised as to require us to reverse the judgment because of its admission.

The judgment should be affirmed, with costs.

PATTERSON, P. J., and LAMBERT, J., concur.

McLAUGHLIN, J. (dissenting). I am unable to concur in the prevailing opinion. The deed was duly executed, acknowledged, and delivered. As to the delivery, I do not see how it could be established any more satisfactorily than by proving that the deed at the time of the death of the grantee was in a safe deposit box to which he alone, prior to his death, had access. The delivery, under such circumstances, amounts to more than a presumption (as to the intent of the grantor to make it an effective conveyance), and such deed cannot be overcome by proving vague and indefinite declarations of the grantee made prior and subsequent to it. If it can, then a deed of conveyance amounts to but little, and titles, as evidenced by such deeds, rest upon a very insecure foundation.

I also think the court erred in permitting the plaintiff, against the objections of the defendants, to testify as to certain statements made to her by her husband. The objections made to this testimony were specific enough, inasmuch as they must necessarily have apprised the court of the reason why it was claimed this evidence was not admissible.

HOUGHTON, J., concurs.