*Decision will be entered under Rule 50.*

OSWEGO FALLS CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 25229, 28301, 32673, 34352. Promulgated May 12, 1932.

*James P. Quigley, Esq.,* and *Alexander H. Cowie, Esq.,* for the petitioner.

*James A. Lyons, Esq.,* for the respondent.

#### OPINION.

TRAMMELL: These are proceedings for the redetermination under section 280 of the Revenue Act of 1926 of the petitioner's liability as transferee as alleged by the respondent for income and profits taxes claimed to be due from the Oswego Falls Pulp & Paper Company and Sealright Company, Inc., for the years 1917 to 1922, inclusive, as follows:

| | Docket No. | Year | Deficiency |
|---|---|---|---|
| Oswego Falls Pulp & Paper Company | 32673 | 1917 | $27,612.09 |
| Do | 34352 | 1918 | 2,405.42 |
| | | 1919 | 13,198.47 |
| Do | 28301 | 1920 | 52,712.60 |
| | | 1921 | 31,161.19 |
| Sealright Company, Inc | 25229 | (¹) | 4,128.83 |

¹ Month of January, 1922.

Upon petitioner's motion the hearing in the first instance was limited to the questions:

(a) Did the respondent err in determining that the petitioner is a transferee within the meaning of section 280 of the Revenue Act of 1926 in respect of the Oswego Falls Pulp & Paper Company and Sealright Company, Inc.?

(b) Are the proposed deficiencies barred by the statute of limitations?

The petitioner also contends that the Board does not have jurisdiction in Docket 28301 with respect to the years 1920 and 1921, because it is not founded on a competent notice of deficiency from the Commissioner.

The petitioner was organized pursuant to an "agreement of Consolidation of the Oswego Falls Pulp and Paper Company, the Skaneateles Paper Company and the Sealright Company, Inc., forming Oswego Falls Corporation." This agreement is dated January 30, 1922, and was signed by all of the directors of the Oswego Falls Pulp & Paper Company, the Skaneateles Paper Company and the Sealright Company, Inc. The said agreement was filed with the Secretary of State of New York on January 31, 1922. The portions of this agreement material to the issues presented in this case read as follows:

* * * That pursuant to Section 7 of the Business Corporation Law of the State of New York the parties aforesaid agree to and do hereby consolidate the said The Oswego Falls Pulp and Paper Company, The Skaneateles Paper Company, and Sealright Company, Inc., into a single corporation, and do hereby further consent, agree and provide as follows:

First: The name of the new corporation formed by this consolidation shall be "Oswego Falls Corporation."

* * * * * * *

Eighth: The shares of the capital stock of the new corporation shall be distributed in the following manner: The entire amount thereof, being Two Hundred Fifty Thousand Dollars ($250,000) of the First Preferred Stock, consisting of twenty-five hundred (2500) shares of the par value of One Hundred Dollars ($100) each, seven Hundred Fifty Thousand Dollars ($750,000) of the Preferred Stock, consisting of seventy-five hundred (7500) shares of the par value of One Hundred Dollars ($100.00) each, and One Million Five Hundred Thousand Dollars ($1,500,000) of the Common Stock, consisting of fifteen thousand (15,000) shares of the par value of One Hundred Dollars ($100)

each, shall be issued and delivered to H. Lester Paddock, as Trustee for the stockholders of the consolidating corporations and be distributed and used by him in the manner set forth in a certain agreement between all of the stockholders of said consolidating corporations as parties of the first part and the said H. Lester Paddock as party of the second part, the original of which agreement is annexed hereto, and, by reference, made a part hereof.

The trust agreement between the stockholders of the consolidating corporations and H. Lester Paddock, above referred to, provided, in so far as material here, that the new consolidated corporation should issue and deliver to Paddock, as trustee, all of the capital stock of the new corporation authorized by such consolidation; that the trustee should then deposit all of said stock in a five-year voting trust, except 2,500 shares of first preferred stock, which were to be sold, or, if not sold, should be transferred to the treasury of the consolidated corporation; and that the trustee should thereupon issue to each stockholder of the consolidating corporations voting trust certificates representing shares of preferred and common stock of the new consolidated corporation, in certain specified ratios to the stock held in the respective consolidating corporations.

The net value of the assets of the Oswego Falls Pulp & Paper Company on January 31, 1922, was in excess of any liability asserted against the petitioner as transferee of the aforesaid Oswego Falls Pulp and Paper Company. The net value on January 31, 1922, of the assets of the Sealright Company, Inc., was in excess of any liability asserted against the petitioner as a transferee of the aforesaid Sealright Company, Inc.

The original income and profits-tax returns of the Oswego Falls Pulp & Paper Company for the years 1917 to 1921, inclusive, were filed on the following dates: for 1917, on March 30, 1918; for 1918, on June 4, 1919; for 1919, on May 11, 1920; for 1920, on March 15, 1921; and for 1921, on August 15, 1922.

The Sealright Company, Inc., filed no income and profits-tax return for the month of January, 1922. On January 12, 1927, the respondent determined that there was due from the Sealright Company, Inc., for the month of January, 1922, income and profits taxes in the amount of $4,128.83 and mailed to the petitioner a notice of tax liability against the petitioner as a transferee of the assets of the Sealright Company, Inc.

Prior to November 19, 1925, a series of income and profits-tax waivers purporting to extend the period within which assessment of tax liability of the Oswego Falls Pulp & Paper Company for 1917 and subsequent years could be made, was filed in the name of or in behalf of that company.

All of such prior waivers had expired more than a year prior to the dates on which notices of deficiency were mailed with respect to

the tax liabilities involved therein. It is therefore unnecessary to discuss any of such prior waivers. However, a waiver was filed for the years 1917, 1918, 1919, and 1920, on November 19, 1925, which was to remain in effect until December 31, 1926. This was executed in the name of Oswego Falls Pulp & Paper Company by H. L. Paddock, president, and bore the corporate seal of that company. On the same date the following waiver was filed:

NOVEMBER 19, 1925.

In pursuance of the provisions of existing Internal Revenue Laws Oswego Falls Pulp and Paper Co. (Parent), a taxpayer of Fulton, New York, and the Commissioner of Internal Revenue hereby waive the time prescribed by law for making any assessment of the amount of income, excess-profits, or war-profits taxes due under any return made by or on behalf of said taxpayer for the four years 1917, 1918, 1919 and 1920 under existing revenue acts, or under prior revenue acts.

(See another waiver of same date for years 1909 to 1916 incl.)

This waiver of the time for making any assessment as aforesaid shall remain in effect until December 31, 1926, and shall then expire except that if a notice of a deficiency in tax is sent to said taxpayer by registered mail before said date and (1) no appeal is filed therefrom with the United States Board of Tax Appeals then said date shall be extended sixty days, or (2) if an appeal is filed with said Board then said date shall be extended by the number of days between the date of mailing of said notice of deficiency and the date of final decision by said Board.

[Signed]     OSWEGO FALLS PULP & PAPER CO.

By its sole beneficiary and successor through consolidation to wit:

OSWEGO FALLS CORPORATION, *Taxpayer.*

[SEAL.]     By H. L. PADDOCK, *President.*

Attest: A. M. HURD,
          *Asst. Secretary.*

D. H. BLAIR, *Commissioner.*

The above waiver bears the corporate seal of the petitioner, Oswego Falls Corporation. An income and profits-tax waiver for the year 1921 was executed under date of May 3, 1926, and stated: " This waiver of the time for making any assessment as aforesaid shall remain in effect until December 31, 1926 * * *." The instrument was signed " OSWEGO FALLS PULP & PAPER COMPANY, by Its Successor and Sole Beneficiary through Merger January 1, 1922, OSWEGO FALLS CORPORATION, Taxpayer, by H. L. Paddock, President." This instrument also bore the corporate seal of the petitioner, Oswego Falls Corporation.

A similar waiver for the year 1921, extending the time for making assessment to December 31, 1927, and bearing the same signature and seal as the document last above mentioned, was executed on July 21, 1926.

The following tax collection waiver was filed on November 18, 1927:

TAX COLLECTION WAIVER

NOVEMBER 18, 1927.

It is hereby agreed by and between OSWEGO FALLS PULP AND PAPER COMPANY, of Fulton, New York, party of the first part, and the COMMISSIONER OF INTERNAL REVENUE, Party of the second part, that the amount of $7,642.98, representing an assessment of income tax for the year 1919 made against the said party of the first part, appearing on the May, 1920 Income Tax Assessment list, page 4480, line 8, for the 21st District of New York, may be collected (together with such interest, penalties, or other additions as are provided for by law) for said party of the first part by distraint or by a proceeding in court begun at any time prior to December 31, 1928.

This document is executed for the purpose of extending the period stated in a similar waiver dated June 22, 1927, which expires December 31, 1927.

Executed for the Oswego Falls Pulp and Paper Company by the Transferee of all of its assets.

[Signed]       OSWEGO FALLS CORPORATION
                              *Taxpayer*
            By H. L. PADDOCK, *President.*
            D. H. BLAIR,
               *Commissioner of Internal Revenue*
            By J. W. CLARK,
               *Collector of Internal Revenue*

Similar tax collection waivers for 1919 taxes were filed on October 30, 1928, and November 18, 1929, the last named expiring December 31, 1930. All of these collection waivers as to the 1919 tax waived collection of a definite amount, to wit, $7,642.98, which had been assessed in May, 1920. Regardless of the validity of any other such collection waiver, the one filed in October, 1928, after the passage of the 1928 Act and before January 1, 1929, is valid and effective as to the amounts stated therein under the express terms of section 506 (b) of the Revenue Act of 1928, which amends section 278 of the Revenue Act of 1926, provided it was signed by proper authority. *B. Hayman & Co.,* 25 B. T. A. 736. By its terms this waiver extended the time for collection only of the amount specifically stated therein and not any additional amount subsequently determined by the respondent. The question as to whether this waiver was signed by proper authority so as to bind the petitioner is hereinafter discussed.

Notices of tax liability under section 280 of the Revenue Act of 1926, upon which these proceedings are based, were mailed to the petitioner as follows:

| Docket No. | Notice mailed |
|---|---|
| 32673 | October 4, 1927 |
| 34352 | November 29, 1927 |
| 28301 | March 10, 1927 |
| 25229 | January 12, 1927 |

Within 60 days from the mailing of the notices of deficiencies, petitions in the above mentioned dockets were filed with the Board.

With respect to the question of jurisdiction in Docket No. 28301, it is claimed that the notice of tax liability under section 280 of the Revenue Act of 1926 upon which the petition was filed was not a notice either by or from the Commissioner for the reason that the signature is not in the handwriting of the Commissioner or any other person. The notice of tax liability is signed as follows: " D. H. Blair, Commissioner, by —————— Assistant to the Commissioner."

There is nothing in the statute which requires that the Commissioner should personally sign a notice of deficiency or a notice of tax liability under section 280, or to require him to place his signature on a notice of deficiency. The statute is complied with if the Commissioner determines the deficiency and mails a notice thereof. There is no evidence that this was not done. The notice of tax liability here in question is on a letterhead of the Commissioner and no fair question can be raised but that it is valid notice of tax liability within the requirement of the statute. It was accepted as such by the petitioner, and from it the petitioner appealed to this Board for a redetermination of its liability. We can not concur in the petitioner's contention on this point. Cf. *Tameling* v. *Commissioner*, 43 Fed. (2d) 814.

The two remaining questions for consideration are (1) whether the respondent erred in determining that the petitioner is a transferee within the meaning of section 280 of the Revenue Act of 1926, and (2) whether the proposed deficiencies are barred by limitation.

The question whether the proposed deficiencies, or some of them, are barred by limitation is not dependent solely upon the validity of the waivers above referred to. There is also the question whether the waivers, even if valid, extended the time for assessment of the taxes until the date of the mailing of the deficiency notices. This latter question is dependent upon whether the petitioner is a transferee within the meaning of the statute.

Section 280 (b) of the Revenue Act of 1926 provides that the liability of a transferee may be assessed within one year after the expiration of the period of limitation for assessment against the taxpayer. Therefore, if this petitioner is liable as transferee, and if either of the waivers of November 19, 1925, above, was a valid agreement whereby the time for making assessment for the years 1917, 1918, 1919 and 1920 was extended to December 31, 1926, then, the deficiency notices having been mailed within one year thereafter, the deficiences determined by the respondent for said years are not barred by limitation.

With respect to the deficiency for 1921, since the waiver of July 21, 1926, covering said year, extended the time for assessment to December 31, 1927, and the notice of deficiency was mailed March 10, 1927, the period for assessment and collection has not expired, regardless of whether petitioner is a transferee, if the waiver is valid. The validity of this waiver will be discussed in connection with the other waivers. No return was filed by or on behalf of the Sealright Company, Inc., for the month of January, 1922, and no question of limitation is raised with respect to the deficiency for that period.

The waivers in question, we think, were valid and must be given effect according to their terms. At the respective dates of execution of these waivers the original taxpayer corporations had long been dissolved as a result of the act of consolidation (see *People* v. *New York etc. R. Co.*, 29 N. E. 959; *People* v. *Rice*, 28 N. E. 251) and the tax liabilities therein referred to were then the direct, legal liabilities of the petitioner corporation imposed upon it by the provisions of the New York statute, hereafter discussed, under which it was created. No other person, either individual or corporate, was directly or indirectly interested as taxpayer in the matter of the correct determination and assessment of such liabilities, and, while the petitioner purported to act as the agent, beneficiary or successor of the dissolved corporations, the fact remains that it was acting solely as principal in its own behalf and for its own benefit. And all these facts were well known to both parties to the waivers. The fact that the petitioner, through an erroneous conception of the law, executed the instruments in a technically incorrect capacity, should not, in our opinion, be held to nullify the clearly indicated intention of the parties and to render invalid the consent agreements under which both acted in apparent good faith.

The consolidated corporation, having been made by statute directly liable for all obligations of its components when it executed the said waivers, agreed to an extension of the time within which its own liability might be determined and assessed. The legal effect of the waivers, in these circumstances, is the same as if the instruments had been drawn in the name of and executed by the petitioner as a principal party. The petitioner was in fact acting for itself as principal and not for another as agent. The purported principal was nonexistent, and it is well settled that a nominal agent will be held personally liable where he professes to enter into a contract for a principal who is at the time nonexistent. 2 Corpus Juris 808; Storey's Agency, ¶288; *Magruder* v. *Belt*, 12 D. C. App. 151; *Thistle* v. *Jones*, 92 N. Y. S. 113; *Rowland* v. *Hall*, 106 N. Y. S. 55; *Hauser* v. *Falk*, 133 N. Y. S. 438. See also Restatement of the Law of Agency by the American Law Institute, tentative draft No. 6, sec. 549. These waivers are, however, like any other waivers signed by a

corporate taxpayer in its own behalf, to be given effect according to their terms, in respect to the extension of the period of limitations. See also *Phillips* v. *Howe Films Co.* (Pa.), 33 Fed. (2d) 891.

The petitioner's waiver of November 19, 1925, covering the years 1917 to 1920, inclusive, extended the period for assessment to December 31, 1926, on which date by its express terms it expired. It follows that if the petitioner is liable only as the taxpayer and not as a transferee, the deficiencies asserted for said years are barred by limitation, since the deficiency notices were mailed during the year 1927, subsequent to expiration of the period as extended by the waiver.

Also, assessment of the deficiencies for said years is barred by limitation if the petitioner is liable therefor only as a transferee, and not as the taxpayer. Section 280 (b) (1) provides that the liability of a transferee may be assessed within one year after the expiration of the period for limitation of assessment against the taxpayer. The period for assessment of the said deficiencies against the original taxpayer expired long prior to 1927, unless extended by the petitioner's waiver of November 19, 1925. However, by that waiver the petitioner agreed to an extension of time for assessment only of its own liability, and if that liability was the liability of a transferee, the waiver can not be said to have extended the time for assessment against the taxpayer. Neither a transferee nor a successor corporation is competent to execute a waiver extending the period for assessment against " the taxpayer " not in existence for any purpose. *Bamberg Cotton Mills Co.*, 8 B. T. A. 1236; *Carnation Milk Products Co.*, 15 B. T. A. 556; *Barron-Anderson Co.*, 17 B. T. A. 686; *South Penn Oil Co.*, 20 B. T. A. 1180; *Lillie M. Jones et al.*, 21 B. T. A. 275. Therefore, if the petitioner is liable only as a transferee, whether at law or in equity, then the period of assessment against the taxpayer expired more than one year prior to the date in 1927 when the notices of deficiency were mailed, and the deficiencies are barred. The correctness of this view seems to be recognized by the language used in subdivision (c) of section 280, which provides that in the case of a corporation which has terminated its existence, the period of limitation for assessment against the taxpayer shall be the period that would be in effect had the termination of existence not occurred. This provision clearly connotes the recognition on the part of Congress that the period of limitation for assessment against a corporate taxpayer, which has been fully and completely dissolved, can not be extended by a consent agreement, since obviously there could not be any authority competent to execute an agreement on behalf of such a taxpayer. The waivers can only be valid on the principles that they were the waivers of the corporation which signed them, yet if

they were the waivers of the Oswego Falls corporation which signed them, the statute makes no provision for an additional year after the period therein stated. The extra or additional year allowed is from the time the period expired against the " taxpayer " which transferred assets. If a taxpayer who transfers assets, or the transferor, extends the time for assessment by a waiver, then the statute provides an additional year to proceed against the transferee, but if the transferee signs a waiver in its own behalf, there is no provision which extends the period beyond that stated in the waiver. The only sound conclusion to be reached is that if the waivers be held to be those of the dissolved corporation they are invalid, but if those of the corporation which signed them, the period has expired, as no additional year is provided.

While the deficiencies for the years 1917 to 1920, inclusive, are barred by limitation if the petitioner is liable (1) only as the taxpayer, or (2) only as a transferee, a different conclusion must be reached if it is liable in a dual capacity, both as taxpayer and transferee. If the petitioner is liable as the taxpayer, then its waiver extended the period for assessment against " the taxpayer " to December 31, 1926, and if it is also liable as transferee, then the respondent moved in time, since he mailed the notices of deficiency in 1927, within one year after expiration of the period so extended for assessment against " the taxpayer." A person can not be both principal and agent, although he may purport to act as agent and be held as principal under the conditions herein stated. We think the Oswego Falls Corporation was in fact principal.

If the petitioner was liable in such dual capacity, the respondent would have had an election of remedies, and, prior to December 31, 1926, could have proceeded to collect the deficiencies from the petitioner on its liability as the taxpayer, or, prior to December 31, 1927, could have proceeded to collect from the petitioner on its liability as the transferee, by suit at law or action in equity, or under the provisions of section 280 of the Revenue Act of 1926. Respondent in fact elected to pursue the remedy last mentioned. Did he have such right of election? This depends upon whether the petitioner is liable, at law or in equity, as a transferee of assets of the original taxpayer corporation, in addition to being liable as " the taxpayer."

Section 280 did not create any new liability on the part of a transferee, but provides merely a new remedy for the enforcement of such liability as already exists at law or in equity. *Fostoria Milling & Grain Co.*, 11 B. T. A. 1401; *Phillips* v. *Commissioner* 283 U. S. 589. In the latter case the court said:

Section 280 (a) (1) provides the United States with a new remedy for enforcing the existing " liability, at law or in equity." The quoted words are employed in the statute to describe the kind of liability to which the new

remedy is to be applied and to define the extent of such liability. The obligation to be enforced is the liability for the tax.

We think also it must be conceded without argument that the "liability, at law or in equity," for the enforcement of which section 280 provides the new remedy, is the liability of a transferee which may be enforced in the Federal *courts either by suit at law or action in equity*, depending upon whether the liability is at law or in equity. In other words, it is that liability of a transferee for the tax of the transferor, which, prior to the enactment of section 280, could have been enforced only by an appropriate remedy available in the Federal courts, either at law or in equity. Hence, to determine whether this petitioner was or is liable both as a taxpayer and as a transferee and answerable in a suit at law or action in equity for the taxes of its component corporations, so that the respondent had an election of remedies, we must look to the decisions of the Federal courts to ascertain whether there were remedies available for the enforcement of such dual liability, independently of section 280. If such liability exists, either at law or in equity, it may be enforced by the new remedy provided by section 280; otherwise, not.

The liability of a transferee of corporate assets, either at law or in equity, for the debts of the transferor is limited to the value of the assets received by the transferee. A transferee of corporate assets was not liable at common law for the debts of the transferor. (7 R. C. L. ¶746 and authorities cited.) Hence, as there is no evidence of any assumption of liabilities by contract, this petitioner is not liable *at law as a transferee* unless such liability was imposed upon it by the state statute, and is not liable in equity unless the facts establish such liability under the recognized principles laid down by courts of equity.

The petitioner was organized under and pursuant to the business corporation law of New York, the pertinent provisions of which are set out in the footnote below.[2] Section 10 of the said law provides

---

[2] BUSINESS CORPORATION LAW (NEW YORK)

SEC. 7. *Consolidation of corporations.*—Any two or more corporations organized under the laws of this state for the purpose of carrying on any kind of business of the same or of a similar nature, which a corporation organized under this chapter might carry on, may consolidate such corporations into a single corporation, as follows: The respective corporations may enter into and make an agreement signed by a majority of their respective boards of directors and under their respective corporate seals, for the consolidation of such corporations, prescribing the terms and conditions thereof, the mode of carrying the same into effect, the name of the new corporation, the number of directors who shall manage its affairs, not less than three, the names and post-office addresses of the directors for the first year, the term of its existence, not exceeding fifty years, the name of the town or towns, county or counties, in which its operations are to be carried on, the name of the town or city and county in this state in which its principal place of business is to be situated, the amount of its capital stock, which shall not be larger in amount than the fair aggregate value of the property, franchises and rights of such corporations, and the number of shares into which the same is to be divided, the manner of distributing such capital stock among the holders thereof, and if such corporations, or either of them, shall have been organized for the purpose of carrying on any part of its business in any

that all the rights, privileges, franchise and interest, and all property, real, personal and mixed, of each of the consolidating corporations shall be taken and deemed to be transferred to and vested in the new corporation without further action or deed; and section 11 provides that the new or consolidated corporation " shall succeed to and be held liable to pay and discharge all such debts and liabilities of each of the corporations consolidated in the same manner as if such new corporation had itself incurred the obligation or liability to pay such debt or damages." Thus, the consolidated corporation is made by the state statute directly and primarily liable, as an original obligor and not as a transferee, for all the debts and liabilities of each of the component or consolidating corporations. The liability so imposed is absolute, and without limitation, and is enforceable in the same manner as if the new corporation had itself incurred the obligations. It extends to all the debts and liabilities of the old cor-

---

place out of this state, the agreement shall so state, with such other particulars as they may deem necessary.

\* \* \* \* \* \* \*

Sec. 9. *Powers of consolidated corporations.*—Such new corporation in addition to the general powers of corporations shall enjoy the rights, franchises and privileges possessed by each of the corporations so consolidated, subject to the restrictions, liabilities, duties and provisions contained in this chapter so far as the same may be applicable to the purposes for which it shall have been organized and expressed in the agreement for consolidation, and may prosecute or carry on any kind of business which each of the consolidating corporations was authorized by law to conduct.

Sec. 10. *Transfer of property of old corporations to consolidated corporations.*—Upon the consummation of such act of consolidation, all the rights, privileges, franchises and interests of each of the corporations, parties to the same, and all the property, real, personal and mixed, and all the debts due on whatever account to either of them, as well as all stock subscriptions and other things in action belonging to either of them, shall be taken and deemed to be transferred to and vested in such new corporation, without further act or deed; and all claims, demands, property and every other interest shall be as effectually the property of the new corporation as they were of the former corporations, parties to such agreement and act; and the title to all real estate, taken by deed or otherwise, under the laws of this state, vested in either of such corporations, parties to such agreement and act, shall not be deemed to revert or be in any way impaired by reason of this chapter, or anything done by virtue thereof, but shall be vested in the new corporation by virtue of such act of consolidation; and all the rights, privileges, franchises and property of the corporations, parties to any consolidation heretofore made under this chapter, shall vest as fully in the new corporation thereby created as they were vested in the corporations, parties to such consolidations.

Sec. 11. *Rights of creditors of old corporations.*—The rights of creditors of any corporation that shall be so consolidated shall not in any manner be impaired, nor any liability or obligation for the payment of any money due or to become due to any person or persons, or any claim or demand for any cause existing against any such corporation or against any stockholder thereof be released or impaired by any such consolidation; but such new corporation shall succeed to and be held liable to pay and discharge all such debts and liabilities of each of the corporations consolidated in the same manner as if such new corporation had itself incurred the obligation or liability to pay such debt or damages and the stockholders of the respective corporations consolidated shall continue, subject to all the liabilities, claims and demands existing against them as such, at or before the consolidation; and no action or proceeding then pending before any court or tribunal in which any corporation that may be so consolidated is a party, or in which any stockholder is a party, shall abate or be discontinued by reason of such consolidation, but may be prosecuted to final judgment, as though no consolidation had been entered into; or such new corporation may be substituted as a party in place of any corporation so consolidated, by order of the court in which such action or proceeding may be pending.

porations without regard to the value of the assets or property transferred or " considered or deemed " by the statute to have been transferred. *In re Utica National Brewing Co.*, 154 N. Y. 268; 48 N. E. 521; *Irvine* v. *New York Edison Co.*, 207 N. Y. 425; 101 N. E. 358. Indeed, the language of the statute would seem to justify the conclusion that if at the date of the consolidation the debts and liabilities of one of the consolidating corporations exceeded the value of its assets, the consolidated corporation would nevertheless be liable for all such debts and obligations, in respect of which a transferee, as such, would have no liability whatever.

We can reach no other conclusion than that by the provisions of the New York statute, under which it was created, the petitioner corporation was made directly and primarily liable for the debts and obligations of its component corporations, without reference to the value of the assets " deemed " by the statute to have been transferred, and that no liability at law as a transferee was thereby imposed on it. If it were liable by virtue of the fact that it had received assets of the component corporation or as a transferee, either at law or in equity, there would be a different liability than " as if the new corporation had itself incurred the obligations or liability to pay such debt * * *." The new corporation under the New York statute may be sued " in the same manner " as the component corporation could have been sued. This indicates a direct statutory liability.

Is the petitioner liable in equity as a transferee under the New York statute? In the case of *Bowman Hotel Corporation*, 24 B. T. A. 1193, we held that the consolidated corporation, under the New York statute, was itself " the taxpayer." In that connection, we said:

Petitioner contends that in these dockets which we have just named the Bowman-Biltmore Hotels Corporation, as successor, is a proper party petitioner, but that any deficiency found by this Board must be found against the corporation to whom the deficiency notice was mailed, which, as we have already pointed out, in these dockets was the Bowman Hotel Corporation. We do not agree to this latter contention, because, as we interpret the statutes of the State of New York, providing for the consolidation of corporations, the petitioner corporation in this proceeding, Bowman-Biltmore Hotels Corporation, is obligated and birthmarked by statute with all primary liability of its components—an obligation which is not measured or proven by its obligation as transferee of property under section 280 of the Revenue Act of 1926, but is determined by the primary debt or obligation of the component.

\* \* \* \* \* \* \*

A corporation chartered under the laws of the State of New York which has had its existence terminated by reason of its consolidation with another corporation, thus forming a new corporation, presents a very different situation from that which exists where a corporation has transferred its assets to another

corporation and then itself has gone into voluntary liquidation. In the latter situation the corporation which has gone into voluntary dissolution can, and is required to, wind up its affairs under section 105 (8) of the Stock Corporation Law of the State of New York, and may sue and be sued in its own name, whereas no such provision is made for corporations which are dissolved by reason of their consolidation under the cited statutes of New York.

The rights of creditors in the latter case are determined by section 90, Consolidated Laws of New York, * * *. In the case of the consolidation involved in the instant case, if at the time the consolidation was made a suit had been pending against the Bowman Hotel Corporation, it would not have abated by reason of the consolidation, but might have been prosecuted either against the corporation in its own name or the new corporation, Bowman-Biltmore Hotels Corporation, might have been substituted as a party. This by reason of the express language of the statute.

There can be no question, however, that any suits brought after the effective date of the consolidation, either to recover claims owing to the Bowman Hotel Corporation prior to the date of its consolidation, or liabilities existing against it at the time of the consolidation, including, of course, tax liabilities, would have to be brought by or against the Bowman-Biltmore Hotels Corporation. *Capp* v. *Colorado Coal Co.*, 60 N. Y. 293. There is no provision of the New York statutes which permits a consolidating corporation to sue or be sued in its own name after the effective date of its consolidation.

For the reasons indicated in the foregoing decision, we think the petitioner in this case was by the New York statute made liable directly and primarily as the taxpayer and not secondarily liable and that no liability, either at law or in equity, as a transferee was by said statute imposed upon the petitioner. In the *Bowman Hotels* case, *supra*, we said that the cases of *Pittsburgh Terminal Coal Corporation*, 23 B. T. A. 248; *Pittsburgh & West Virginia Ry. Co.*, 22 B. T. A. 876; and *Gideon-Anderson Co.*, 18 B. T. A. 329, would not be followed.

Is the petitioner liable as a transferee under the equitable trust fund doctrine cognizable in the Federal courts, independently of the state statute?

It is a settled principle in the Federal courts that equity will not entertain jurisdiction where there is an adequate remedy at law available in such courts, unless it is shown that there is some feature of the case peculiarly within the province of a court of equity. *Dill* v. *Ebey*, 229 U. S. 199; *Boise Artesian Hot etc., Water Co.* v. *Boise City*, 213 U. S. 276; *United States* v. *Bitter Root Dev. Co.*, 200 U. S. 451; *Southern Pacific R. Co.* v. *United States*, 200 U. S. 341. The rule is stated by the court in *Watson* v. *Sutherland*, 5 Wall. 74, 79, as follows:

The absence of a plain and adequate remedy at law affords the only test of equity jurisdiction, and the application of this principle to a particular case, must depend altogether upon the character of the case, as disclosed in the pleadings.

This rule was early adopted by Congress and given the force and effect of a Federal statute. See Judicial Code, ¶267; Rev. Stat., ¶723; Act Sept. 24, 1789 (1 Stat. 82), which provide that suits in equity shall not be sustained in any court of the United States where a plain, adequate and complete remedy may be had at law. While this statute is merely declaratory of a long established principle of equity jurisdiction, it was intended to emphasize the rule and to impress it upon the attention of the courts, and its provisions are obligatory at all times and under all circumstances. 21 Corpus Juris 41; *Scott* v. *Neely*, 140 U. S. 106, 110; *Wehrman* v. *Conklin*, 155 U. S. 314.

Prior to the adoption of the New York statute, a creditor of a consolidated corporation in the situation presented here could have pursued only one remedy in the Federal courts, namely, an action in equity to subject to the satisfaction of his claim the assets of the original corporate debtor in the hands of the consolidated corporation. What effect, then, does the New York statute have upon the Federal equity jurisdiction?

It has been decided many times that the equity jurisdiction of the Federal courts can not be enlarged or diminished by state statutes, and that whether such courts have jurisdiction in a particular case will be determined by inquiring whether by the principles of the common law and equity, as distinguished and defined in this country and in England at the time of the adoption of the Constitution of the United States, the relief sought was obtainable in a court of law, or was one which only a court of equity was fully competent to give. *Waterman* v. *Canal-Louisiana Bank Co.*, 215 U. S. 33; *Smythe* v. *Ames*, 169 U. S. 466; *Massachusetts Mills* v. *Cohn*, 150 U. S. 202; *McConihay* v. *Wright*, 121 U. S. 201.

While it is well settled that the Federal equity jurisdiction can not be enlarged or diminished by state legislation, it is equally well settled that where a state statute gives a new right which may be enforced by an action at law equally available in a Federal or state court, in cases where the Federal court has jurisdiction, such legal remedy may supersede and displace an equitable remedy theretofore existing in the Federal jurisdiction. A state statute which changes substantial rights of the parties by changing the substantive law of necessity effects a change in the procedure or remedy by which such new rights are enforced. This point is made clear in an interesting and well reasoned discussion by the court in *Union Pacific Railroad Co.* v. *Board of Commissioners*, 222 Fed. 651, as follows:

The statute of Colorado here under consideration changes that law, * * * This is substantive law. It gives a new right. The statute has nothing to do directly with the law of procedure. The remedy for the enforcement of the

right which it gives is not prescribed by the statute. That remedy is a suit at law. It is given by the common law. That is the remedy now, was the remedy in 1789, and for some centuries before that date. This remedy, as Mr. Justice Van Devanter points out in *Singer Sewing Machine Co.* v. *Benedict*, 229 U. S. 481 * * * is available in the Federal courts the same as in the state courts.

> \* \* \* \* \* \* \*
>
> It is well established, as counsel for appellant contend, that state legislation on the subject of procedure can not impair the remedial power of Federal courts of equity. Over against this, however, stands the equally well established principle that the legislature of the state may, within constitutional limits, change the substantive law. Such changes will, of necessity, frequently produce changes in remedial relief. A system of practice which took no account of changes in the substantial rights of litigants would be anomalous indeed. Whole departments of equitable jurisdiction have been swept away by changes in the substantive law. The rights of married women and of assignees of choses in action are familiar illustrations. In 1789, and for some decades thereafter, equity had exclusive jurisdiction of such rights. Changes in substantive law have so completely obliterated that jurisdiction that a reference to it is beginning to seem antiquarian. *A statute which gives a new right, that may be enforced by an action at law, may remove the very evil which was the ground of equitable jurisdiction.* When such a statute is passed, it must be taken in connection with section 723, Rev. St. U. S., *and the combined result must produce a change in the right to equitable relief in the Federal courts.* [Italics supplied.]

See also *Brine* v. *Insurance Co.*, 96 U. S. 627.

The New York statute altered the substantive rights of the parties as they theretofore existed by making the consolidated corporations liable as an original obligor for the debts and obligations of each of the consolidating corporations, and thus made available to the creditor a new remedy in such situation. The statute changed the substantive law, and thereafter the creditor could collect his debt from the consolidated corporation by suit at law as a direct liability. This remedy was and is equally available in either the state or Federal courts, and in cases where the latter courts have jurisdiction, such remedy is exclusive. *Pollard* v. *Bailey*, 20 Wall. 520; *Fourth National Bank of New York* v. *Francklyn*, 120 U. S. 747; *United States ex rel. Texas Portland Cement Co.* v. *McCord*, 233 U. S. 157, 162; *Tennessee Coal Iron & R. Co.* v. *George*, 233 U. S. 359. See also *Edison Electric Light Co.* v. *Westinghouse*, 34 Fed. 232.

In the light of the decisions referred to, it can not be doubted that the respondent here, by virtue of the provisions of the New York Statute, could have maintained a suit at law against this petitioner in the Federal courts to collect the taxes in controversy as a primary obligation to the same extent as if it had itself incurred the liability. His right so to pursue such remedy could not be denied. That remedy in all respects was as direct and adequate, and as well designed to afford complete relief, as the equitable remedy theretofore

existing in the case of a transferee under the trust fund doctrine. And the legal remedy so provided was more efficacious, in that the respondent thereby could have reached all the assets of the petitioner, which could not be done by the equitable remedy. In changing the substantive law to effect a change in the material rights and liabilities of the parties, and in providing a new remedy by which the creditor could collect his debt by suit at law, the statute removed the very evil which the equitable remedy was in the first place designed to correct.

The petitioner corporation, having been made by statute directly liable for all the debts of the old corporation, including taxes, was liable as a taxpayer as we held in the *Bowman Hotel* case, *supra*.

The liability of a transferee is a secondary liability. No secondary liability or liability as a transferee at law or in equity is imposed by the New York law. The new corporation is not liable because it received assets of the old corporation, but because of the consolidation under the statutes. Its liability is made primary and direct when corporations are consolidated pursuant to the statute, regardless of whether it received assets in excess of liabilities. It is only secondary liability which may be enforced by the procedure set out in section 280 of the statute, not a primary and direct liability for tax.

The conclusion that the petitioner is not a *transferee* is borne out by many court decisions. The rule is well established that a corporation resulting from a statutory consolidation does not receive the assets of the consolidating corporations by *transfer*, but by universal succession. In *United States* v. *Gillis*, 95 U. S. 407, the Supreme Court had for consideration whether a consolidated corporation under New York law had received a claim against the Government which was held by a component corporation by *transfer* or assignment. The statute provided that if so received the *assignment* or *transfer* was null and void. The court said there are devolutions of title by force of law, without any act of the parties, to which the statute does not apply. See also *Erwin* v. *United States*, 97 U. S. 393; *Butler* v. *Goreley*, 146 U. S. 303; *Hagner* v. *Swayne*, 149 U. S. 242. In the case of *Seaboard Air Line* v. *United States*, 256 U. S. 656, the court held that the passage of title to a claim from a component corporation to the consolidated corporation as the result of consolidation pursuant to statute was not a *transfer* or assignment thereof. The court referred to the union of interests effected by the consolidation.

Under a New York statute the right to file a mechanic's lien could not be transferred, yet the New York court held that the consolidated corporation could file and perfect a lien on account of work per-

formed or goods furnished by a component corporation when corporations were consolidated pursuant to statute. *Chambers* v. *George Vassari's Sons Co.*, 143 N. Y. S. 615. See also *Guaranty Trust Co.* v. *N. Y. & Q. C. Ry. Co.*, 253 N. Y. 199, wherein Justice Cordoza held the consolidated corporation to be "the universal successor to the persona" of the component corporations and that it did not receive the assets by *transfer, assignment* or *purchase.* In other words the new corporation acquired the assets of the component corporations by virtue of having been created out of the old corporations. The fact is that the New York statute merely provides that the new corporation shall be " deemed " to have received the assets of the component corporation. No *actual* transfer of assets occurred. The component corporations made no conveyance of any assets of the petitioner corporation. In fact, they all went out of existence on the birth or creation of the new corporation as the result of the consolidation, as the assets and rights of the component corporations became assets and rights of the new or the consolidated corporation through the corporate change, the change of *persona,* which stepped into the shoes of the old corporations.

For the reasons indicated, it is our opinion that the petitioner is not liable, at law or in equity, as a transferee, for the tax deficiencies asserted by the respondent, and, since section 280 of the Revenue Act of 1926 is applicable only when such liability exists, the provisions of that section do not have the effect of extending the period of collection of the taxes involved beyond the period stated in the waivers.

The petitioner is liable for any deficiencies as a taxpayer, but not as a transferee. It is not both taxpayer and transferee. Aside from the foregoing reasons, there is a natural inconsistency in saying that the same entity is both a " taxpayer " and a " transferee." The word " taxpayer," when used in connection with " transferee," connotes one from whom assets are transferred. " Transferee " is used to designate to whom transferred. It would mean that the same entity had transferred assets from itself to itself. A situation which calls for such designation is indeed anomalous.

To hold that the petitioner is both taxpayer and transferee in order to follow the rule applicable in transferee cases (*Swan Land & Cattle Co.* v. *Frank*, 148 U. S. 603), it would have to be shown that the tax could not be collected from the petitioner as taxpayer before resort could be had against the same entity as transferee.

The direct liability of the petitioner for the deficiencies asserted for the years 1917 to 1920, both inclusive, being barred by limitation, judgments of no deficiency in respect of said years will be entered.

However, the direct liability of the petitioner for the deficiencies asserted for the year 1921 and the month of January, 1922, is not barred.

Reviewed by the Board.

> In Dockets 28301, 32673, and 34352 judgments of no deficiency for the years 1917, 1918, 1919, and 1920 will be entered. Dockets 25229 and 28301 (as to the year 1921) will be restored to the General Calendar for further hearing.

STERNHAGEN concurs in the result only.

---

SMITH, dissenting: So far as the record shows there are deficiencies in tax due the United States from the Oswego Falls Pulp & Paper Company for the years 1917 to 1921, inclusive. The prevailing opinion holds that the deficiencies due for the years 1917 to 1920, inclusive, are barred by the statute of limitations, first, upon the ground that the petitioner is not a transferee of the assets of that company, and, second, upon the ground that if it were the transferee the deficiencies are barred by reason of the fact that the petitioner had no power to file a waiver which would extend the time for making an assessment against the transferor. I think the opinion is in error upon both points.

Clearly, on and after the consummation of the act of consolidation the Oswego Falls Pulp & Paper Company had no assets from which the respondent could collect the deficiencies due from it. Those assets had by operation of law been transferred to the petitioner. Section 10 of the Act of Consolidation specifically provides that all the properties of the consolidating corporations " shall be taken and deemed to be transferred to and vested in such new corporation, without further act or deed." How, in the light of such language, can it be maintained that the new corporation is not the transferee of the assets of the constituent corporations?

Section 280 of the Revenue Act of 1926 was enacted to enable the respondent to proceed in a summary manner against the transferee of the assets of a taxpayer where the taxpayer had, without consideration, parted with its assets. See A. H. Graves et al., 12 B. T. A. 124; Phillips v. Commissioner, 283 U. S. 589, footnote 4. That section did not impose new liabilities upon the transferees of property, although it recognized the fact that in many cases the transferee had a liability for the taxes of the transferor at law as well as in equity. In Phillips v. Commissioner, supra, it was stated:

Section 280 (a) (1) provides the United States with a new remedy for enforcing the existing " liability, at law or in equity." The quoted words

are employed in the statute to describe the kind of liability to which the new remedy is to be applied and to define the extent of such liability. The obligation to be enforced is the liability for the tax. * * *

What possible difference can it make in the proceeding at bar that under the New York statute the respondent could have proceeded directly against the petitioner for the taxes owed by the Oswego Falls Pulp & Paper Co.? Does this fact make it impossible for the respondent to proceed under section 280 of the Revenue Act of 1926? I think not. In my opinion the construction placed upon section 280 in the prevailing opinion frustrates the very purpose that Congress had in mind in enacting the section. I can not subscribe to the reasoning in the majority opinion by which this petitioner is exempted from the deficiencies.

In the prevailing opinion the case of *Seaboard Air Line Ry.* v. *United States*, 256 U. S. 656, is cited for the proposition " that the passage of title to a claim from a component corporation to the consolidated corporation as the result of consolidation pursuant to statute was not a *transfer* or assignment thereof." I think that that case does not stand for the proposition stated. In that case the appellant sued in the Court of Claims to recover balances for transportation services originally payable to the Florida Central & Peninsular Railroad Company, to whose rights it had succeeded through merger or consolidation. The Court of Claims held that it could not prosecute the claim by reason of section 3477 of the Revised Statutes which prohibit "All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein." In its opinion the court stated:

We cannot believe that Congress intended to discourage, hinder or obstruct the orderly merger or consolidation of corporations as the various States might authorize for the public interest. There is no probability that the United States could suffer injury in respect of outstanding claims from such union of interests and certainly the result would not be more deleterious than would follow their passing to heirs, devisees, assignees in bankruptcy, or receivers, all of which changes of ownership have been declared without the ambit of the statute. * * *

The court simply held that it was not the intention of Congress by section 3477 to cover transfers of claims against the United States of that nature. The court did not hold that there was no transfer of the claim from the constituent corporation to the new corporation.

It is further said in the prevailing opinion that if the petitioner be held to be a transferee, the waiver given by it on behalf of the Oswego Falls Pulp & Paper Company on November 19, 1925, is invalid. I can not subscribe to that view. Under section 9 of the Consolidation Act of the State of New York the new corporation, the

petitioner herein, enjoyed the " rights, franchises and privileges possessed by each of the corporations so consolidated * * * and may prosecute or carry on any kind of business which each of the consolidating corporations was authorized by law to conduct." How can it be contended in the light of such language that a waiver given by it to save itself from the immediate necessity of paying the tax is not a valid waiver? Substantially the question here presented was before the Court of Appeals for the Fifth Circuit in *Lucas* v. *Hunt*, 45 Fed. (2d) 781. The facts in that case were that upon dissolution a taxpayer corporation was by statute continued in existence and the management of its affairs entrusted to a liquidator for a period of three years to wind up its business. A waiver extending the time for making assessment of income and excess-profits taxes was executed after the expiration of the three-year period allowed for winding up its affairs. Without the waiver the Commissioner in the performance of his duty would have made assessment within the statutory period and circumstances show that the Commissioner relied upon the waiver. The court stated:

* * * We are of opinion that Hunt by signing the waiver estopped himself to question its validity, with the result that he was bound to respond to the assessment to the extent of funds in his hands which belonged to the dissolved corporation taxpayer. * * *

It should be noted that the question before the court there was whether a transferree could file a waiver which would have any binding effect upon the transferor.

The case of *Phillips* v. *Howe Films Co.*, 33 Fed. (2d) 891, is on all fours with the proceeding at bar. In that case it was held that where a corporation formed by merger bore the name of one of the merging companies and had the same officers, directors, and by-laws as the two constituent merging companies, and the number of shares in the merged company was the same as the number in the merging companies, the stockholders of the merged corporation had the right to file a statutory waiver of limitation on assessments in behalf of the merging corporation for the purpose of procuring a refund of taxes wrongfully collected from the merging corporation. In other words, it was held that the waiver that was executed by the new corporation which had come into existence upon the consolidation or merger of the constituent companies under the Pennsylvania law was a valid waiver.

In the proceeding at bar the waiver was given by the petitioner corporation to stave off the assessment, which, undoubtedly, would otherwise have been made against the Oswego Falls Pulp & Paper Company. Can the respondent be held at fault for relying upon the waiver? Is the United States to be deprived of its taxes by reason

of the fact that the respondent, acting in good faith, relied upon such waiver? To me, the case seems to admit of no doubt that the deficiencies are legally collectible from the petitioner as a transferee.

SEAWELL agrees with this dissent.